Good morning. Neil McCarthy on behalf of Appellant. If I could reserve five minutes, please. All right. Thank you. You may proceed. Thank you. On these facts in the lower court, the defendants initially chose to challenge the pleading on a 12B6 basis. And Judge Chen found that we had properly pled a claim against JPMorgan under a Twombly analysis. So we are now faced with the situation where we have a properly pled claim, but no forum to exercise that claim. Initially, I'd like to point out that since briefing, there was a no forum. What I mean, I mean, it seems to me there is such a forum. You just want it in federal court now. What I mean, Justice Smith, is that FIREA does not have jurisdiction over JPMorgan because JPMorgan is a solvent bank. Our claims are exclusively against JPMorgan. Well, I expect that can be an argument you might make. But FIREA certainly has jurisdiction over any claims that over which FIREA has jurisdiction. And I guess we're here to determine whether they have jurisdiction over the claims you're bringing or not. And if I could turn directly to that point. Okay. Because you've got a couple areas. You've got, I mean, I think you have the Sixth Circuit and the Eleventh Circuit. They've squarely addressed the issue and held that FIREA's plain language jurisdictionally bars suits relating to the acts of the failed bank. And plaintiffs cannot escape this provision by suing only the purchasing bank rather than the FDIC. But then you also, I guess there's a recent D.C. Circuit case as well. Correct? And I think both of you have called that to the Court's attention. That's precisely correct. The recent D.C. Circuit case is the American national decision. And in that decision, there was a focus on what constitutes a claim. And if I could direct the Court's attention to page 1142 of the decision, it states, the word claim is a term of art that refers only to claims that are resolvable through the FIREA administrative process. And the only claims that are resolvable through the administrative process are claims against a depository institution for which the FDIC is the receiver. That's not what we have before us. And if I could turn my attention to the Sixth Circuit decision, which you mentioned, Justice Callahan, the Oak. I hate to correct you, but there is no justice on the Ninth Circuit. We're all judges. I used to be a justice before I came here, and so I took a bump down. Thank you for the correction. The more important part was there is no justice. I think we're on equal footing because I felt there was no justice in the trial court on this one. Strive for consistency. If I could turn to the decision that the judge just mentioned. That follows with the proposition that there are no judges on the U.S. Supreme Court. One of the things that I wanted to emphasize with respect to that Oakwood decision is a note they have at page 387, which says there's no such timing problem in the Oakwood decision. What they're referring to is the timing of the FIREA claim. And we have the opposite situation here. We have an extreme timing problem. In this case, the acquisition took place on September 25th, 2007. Pursuant to the FIREA statute, there was a published announcement of it, and all claims were due by December 30, 2008. The Ponzi scheme, which we're talking about, did not go public until March of 2009. That's the point the SEC came in and publicly made the fraud known. It would have been physically impossible for our clients, A, to have known about the claim, and, B, to have timely filed it under FIREA. Have you adequately severed the claim against Morgan in which it acted, in which you claim it continued the conduct after it acquired WAMU? Well, the reason we requested under Rule 60 the ability to replete was to expand that claim. And that's the reason why, in the case of WAMU, pursuant to the ruling of justice of Judge Chen, he decided that we had adequately pled it. And to be clear, what we pled is a ---- Well, is it paragraph 86? You say, these practices continued after J.P. Morgan acquired WAMU in September 2008. For its own conduct, J.P. Morgan is liable to the plaintiffs. I've deleted the representative capacity. To what degree is there a severance between the damages that flow from the previous conduct and the subsequent conduct? Well, the allegation is that the employees on a Friday of WAMU became the employees on a Monday of J.P. Morgan. All right. Well, but that can't be right, that if a bank goes, you know, it's failed, FDIC takes over, and then the first day that a new bank takes it out for the, you know, the benefit of all the customers and all of that, that then you can dump everything that WAMU did on them. Well, we're certainly not trying to dump everything WAMU did on them with respect to post-acquisition conduct. Our contention is that the employees, while working for J.P. Morgan, furthered the Ponzi scheme. They aided and abetted the Ponzi scheme by the remote banking that we cited. Well, my question was a little different than that. Is there a do we know or is there a severance as between the pre-conduct and the post-conduct, the pre-acquisition and the post-acquisition conduct? Certainly a temporal and factual separation. Is there a monetary division? If there is a monetary division, we don't have access to the number yet because we have yet not done discovery. All right. So the short answer is. So we're just at the jurisdictional stage of that question as well. Correct. We certainly believe there's a monetary distinction, but I cannot quantify a number because we've not yet had discovery on that topic. Right. So reviewing your complaint, I find descriptions of the failed bank's conduct, and all those descriptions stop in September of 2008, just prior to the seizure. The next allegation I find is the discovery scheme in March of 2009. So what did this defendant do and when? This defendant had employees. This defendant just hired the same employees the former bank had, and that's enough to escape on a 12b-1 motion? This defendant challenged those allegations on the 12b-6, which was. I understand it was challenged on the 12b-6, but now we're here on a 12b-1. Correct. So specifically, there is an employee by the name of Bianca Greaves from the Napa branch who we allege facilitated the fraud. She continued as an employee post-acquisition and continued to facilitate the fraud by sending up a remote banking platform, by having access to. After September? Correct. Post-acquisition. Or is that alleged in the complaint? The allegations are the ones that were referred to earlier, Your Honor. Well, I read your allegations in your complaint pretty carefully, and I say, from my review of the complaint, it describes a failed bank's conduct or misconduct, and it all stops in September of 2008. And then the next allegation I find is the discovery of the scheme in March of 2009. So I'm trying to figure out, what is there that I can really hang on to? That the employees continued? Is that what you're hanging on to? I didn't see anything in here which alleges that J.P. Morgan continued to process the Nevada LLSS transactions despite actual knowledge of the Ponzi scheme. That's what I thought you would allege, if you wanted to really suggest there's some jurisdiction. Your Honor, you're correct that the excerpt of record we're relying on is at 85 and 86. And I agree that those facts can certainly be brought out fuller. That's why we requested leave to amend, and that's why we made the Rule 60 motion. Our contention is that those defendants were essential to furthering the fraud during the six-month period between September of 2008 and March of 2009. And they were ---- Are Twombly and Iqbal applicable in a 12b-1 situation? Not in a 12b-1, Your Honor. I mentioned them simply ---- What are you going to do with the Eleventh Circuit's case that suggests it's Sino-Treno v. Coca-Cola that says Twombly and Iqbal are very essential in this kind of a case, 12b-1 case? With respect to the analysis, well, first of all, as I mentioned, there was a Twombly motion. We prevailed on that. With respect to the factual analysis, which I thought the Court was going to, what I was suggesting is the facts we would allege are that the remote banking platform, the fact that a due diligence was done as part of the acquisition of J.P. Morgan by J.P. Morgan of WAMO, and in that there were audit reports that were done, which we have not yet had access to, but we are certainly aware of. And in those audit reports, it is our belief that there is evidence reflecting the Ponzi scheme. Specifically, we have a situation where people are purchasing CDs, and the money flowing through the bank does not go to the purchase of the CDs. It goes to personal accounts of Mr. Wise and Ms. Hagel, who were the perpetrators of the Ponzi scheme. So from our perspective, there are certainly facts that can be found. Well, what are the facts, though? You're saying I believe, I believe, I believe that, I mean, Twombly and Iqbal, I'm ‑‑ I think we're all getting a handle on that as it goes along, but they go for the ‑‑ they stand for the principle that you just can't, you can't throw everything about, all the speculations against the wall and then expect them to stick. You have to be more specific. Again, Justice ‑‑ I mean, WAMO failed. There's no doubt that that's going on. But then, you know, what, you know, if we talk about post‑failure and, you know, post‑acquisition behavior, what can you say besides speculation? Well, what I can say is that we're absolutely certain that the employees continued. We're absolutely certain these are the employees who furthered the Ponzi scheme through the aiding and abetting. Prior to September 8th? And post‑September 8th. Is there anything alleged in your complaint post‑September 8th? The allegations are only those that the court has referred to. Okay. Well, let me ask you another question. Why didn't you move to amend at the appropriate time in this case? Wasn't there a judgment entered? The sequence of this case was there was a denial of the Twomley motion. There was a Rule 12b‑1 filed. At the end of our 12b‑1 opposition, we requested discovery. We did not move to amend, and there was no hearing on the 12b‑1. We then moved under Rule 60. So was there a judgment entered after the summary judgment? Yes. So Rule 60 really isn't used to amend, is it? Haven't we got to talk about Rule 60 as it is and what you have to rule or move for under 60 before you even get to an amend? Yeah. And so we're clear, Judge Smith, there was no summary judgment. There was an entry ‑‑ okay. There was a ‑‑ but there was a judgment on the pleadings, correct? Correct. And with that judgment on the pleadings, was there ever an entry of judgment? Correct. Yes. You say there was? What I'm saying is judgment was entered. We moved to set aside the judgment on the grounds stated out in the Rule 60, which was mistake of law. As I read your motion, it was a motion under Rule 60 to amend. We were seeking ‑‑ right. We were seeking to set aside the judgment in order to amend it. I guess I'm trying to figure out under Rule 60 where do I go to find what you were motioning for? I can understand a motion to amend, but if judgment is entered, as you suggest it is, amendments are over. Right. Our end goal was certainly to try to amend. And the Court is correct. We did not seek to amend earlier than that motion. So how do I grant you a 60 motion, 60B motion just to amend? Under what basis? Well, the basis we moved for in the motion was the mistake of the application of law with respect to FIREA. And due to that mistake in application of law, we were not given the ability. What 60B ‑‑ what 60 provision is that mistake brought under that I can put it right under the Rule 60 motion and determine what you're doing? Give me one moment, please, Your Honor. It was no mistake by the parties. I never heard of a mistake by the judge. No, no. Well, the mistake was in ‑‑ I've heard of such a thing, but not under 60. The mistake I'm referring to is with respect to the application of FIREA, mistake of law. So the judge made the mistake. Correct. And you suggest you can move that under 60? Yes. Actually, your time's expired. I'll give you two minutes for rebuttal. Thank you. Since we've had questions. Good morning, Your Honor. Good morning. Robert Sachs on behalf of Appellee J.P. Morgan Chase. This is a case that is straight down the middle of the statutory provision 1821d13d2, as we could possibly imagine. This case is controlled. It's identical substantively to the Village of Oakwood case from the Sixth Circuit that Your Honors have just cited. It is also very similar to the American First case out of the Eleventh Circuit. And indeed, the Aneco case, which was also discussed, makes very clear that a claim that is intertwined with the misconduct of the failed institution is one that is susceptible to the claims process. So why should we follow that? Because obviously we don't have precedent in the Ninth Circuit on that, correct? Because it's correct, is the reason to follow it, Your Honor. Those cases are based upon a clear and plain reading of the statute and an interpretation of it that is consistent with the interpretations that this Court has rendered in the past, where it is interpreted in each successive case this statute broadly to effectuate its purposes, and it is consistent with the purpose of the statute, which is important not to miss. This statute, FireEar, was passed in order to address a crisis in the savings and loan industry. It was to provide for. It was intended to reach failed banks, correct? It was intended to reach the administration of failed banks. That is correct, as to which this claim is a central part. So. Also the FDIC in receiving the failed banks' assets, correct? That's correct. To address the efficiencies for the FDIC in addressing how to deal with the failed banks' assets, an integral part of which, how do you administer that as the receiver, is disposing of those assets for the best price possible and then dealing with the claimants on the estate. But if J.P. Morgan had committed acts after the purchase of the assets that had nothing to do with what had happened prior or had continued to do the same kind of conduct after purchasing the assets, this statute would not apply, would it? As to the first of your alternatives, Your Honor, you are correct. If J.P. Morgan had committed independent misconduct after the acquisition of the assets it acquired from the receiver for WAMU, this statute would not apply. That effectively, although in a different way, is the Aneco decision, which is that the statute and the statutory exhaustion requirement and the claims process doesn't apply to independent conduct of an acquiring bank. However, in this particular case, the allegations are, as Your Honor pointed out in your prior colloquy, are principally, almost exclusively, all of the facts are based upon the misconduct of Washington Mutual Bank prior to the receivership. Well, not so quick, because that addresses the pre-acquisition conduct, but it ignores the allegations regarding the post-acquisition conduct. Just a second, if I'll ask the question. Isn't it true that you are charged, acting on your own behalf, for conduct that occurred after the acquisition? Yes and no, Your Honor. There is a conclusory allegation and this conduct continued post-acquisition, but there are no facts alleged post-acquisition. These plaintiffs have said. Is it just a matter of chronology as to what conduct happened on what dates? No, Your Honor, it's not. And the reason is this is a claim for aiding and abetting a fraud. These plaintiffs, each named plaintiff here, was defrauded during prior to receivership. They made and purchased the allegedly fraudulent CDs prior to receivership. Those are the facts that are alleged. The conduct that is alleged to have aided and abetted the fraud perpetrated on them is specifically, or specific enough for the Court below, alleged in the complaint. But there is nothing in this complaint that alleges how J.P. Morgan's acquisition of this bank months later could possibly provide a basis for a claim against these plaintiffs. I'm not talking about conduct that occurred months earlier. I'm asking you, are there not allegations in the complaint that contend that you engaged or these employees, as your employees, engaged in conduct after the date of acquisition that resulted in the diminution of value of those securities? There is a cursory allegation of summary allegation that the conduct continued. There is no other. Kennedy, I know that it becomes an ickball and a Twombly question, and I had understood that the Twombly motion had already been ruled on. Is that on appeal here? No, Your Honor. No, Your Honor. Let me explain what happened. Initially, the counsel handling the case made a substantive motion for whatever reason was not familiar, I would say, with the intricacies of firea, and we came in. It's a subject matter jurisdiction, which, of course, has never waived, and made a motion to dismiss on subject matter jurisdiction grounds, which the Court granted. When you talk about a Twombly motion, there was no distinction being made in the first instance between the pre- and post-acquisition conduct, and there is substantial allegations of pre-receivership conduct in this complaint that could arguably support the claims that are being alleged for fraud, but again, based upon the misconduct of Washington mutual pre-receivership, which has to be determined in order to make any determination, and that's one of the fundamental differences here between this case, for example, and Aneco, where in this case, in order to adjudicate their allegations based on their pleading, which alleges successor liability, clearly and specifically, in order to adjudicate that, you have to adjudicate and determine the conduct of the failed institution, which is precisely what firea says in the first instance should be presented to the receiver to determine how to address it. Well, let me – but you string this all together very well, but I'm trying to – but here's where I'm sort of fundamentally struggling, and I'm just going to say this hypothetically, because I don't – I'm not speaking for other members of the panel. I may not even be speaking for myself, but let's assume that you're correct, and the Ninth Circuit were to adopt the Sixth and the Eleventh Circuit's reasoning in the Village of Oakwood and American First, all right? So we get there and say that you're correct about that. Now there is the new D.C. Circuit case, which then – I'm not sure that they're mutually exclusive, because it says that post-acquisition conduct, that banks could be liable for that. So you take WAMU out, you take the FDIC out, but it's – I'm struggling with the point that Chase gets a free pass forever, I mean, obviously on unrelated conduct. Let's not talk about that, but let's talk about if they – whatever WAMU did, they can't be held responsible for that, but then they hire these people, and over a period of time, say it goes on a period of time, that the same thing continues. And the D.C. Circuit would seem to say that Chase could be held responsible for that. So – but in this context here, I'm also finding this procedural morass in terms of then it seems to me that if we accept that the Sixth and the Eleventh are correct, but we also accept the reasoning of the D.C. Circuit, it would seem that a claim could be stated for post-acquisition conduct if, in fact, it met Twombly and Iqbal. But why is that not possible here? Let me try to – you have a couple of questions in there. Sotomayor, I guess, but assuming all that law is correct. And let me – let me try to address them. Let me address them this way. First, let me address the D.C. Circuit case, because I think Your Honor has it a little off. The D.C. Circuit case did not relate to post-acquisition conduct. The D.C. Circuit case actually related to pre-acquisition conduct. It's an allegation that J.P. Morgan Chase, through misconduct, forced the FDIC into selling the bank to it at a low price. The district court found that this was intertwined with the conduct of the FDIC's receiver and therefore fell within the statutory provision. The D.C. Circuit said, no, that's not – we have to read this complaint in the way most favorable to the plaintiff. They are alleging entirely independent conduct by J.P. Morgan Chase. It doesn't implicate the conduct of the receiver.  The D.C. Circuit, in fact, endorsed the Village of Oakwood case in that decision and said if, in fact, they had alleged that J.P. Morgan Chase had been aiding and abetting the FDIC in its misconduct, that would be, as in Oakwood, subject to the bar. Well, but if you take it a little further and say that Chase continues what Wamu did, thinks, you know, continues the Ponzi scheme. I agree. And I'm going to – I was just addressing the case. Okay. Now let me address the rest of your question, Your Honor. This is not a case where Chase gets a free pass. The question here is not whether this is a free pass or an immunity from suit. The question here is whether this claim in the first instance was required to be submitted to the receiver under the claim process, which then has a provision for de novo court review. And the reason this should have been submitted is because any liability on Chase, even for post-acquisition conduct as alleged here, would have to involve the determination of the impropriety of Wamu's conduct pre-receivership, because it is the foundation for any post-conduct claim, even given this most broadest interpretation. But isn't that a question of fact? You're basically arguing that the conduct is not severable and that the damages aren't severable, but I mean, that's not a question of law for an appellate court to decide. That seems to me characteristically a goal of the district court and one that we should not interfere with. I don't disagree with your statement, Your Honor, but the question is when you allege, as they have in this complaint, conduct directly implicating the pre-receivership conduct of the institution that you allege continues. Fine. But why couldn't we say any conduct prior to acquisition falls clearly within the jurisdiction of FIREA, and any conduct, as you readily concede, for post-acquisition conduct falls squarely within the traditional jurisdiction of the Federal courts? You could adopt that rule, but that's not this complaint. That's not what they've done. And the Court ruled on this complaint, and this complaint contained allegations of misconduct by WAMU and successor liability, and that's the case that we're up here on. That's not the complaint they alleged. Well, just a minute. That's not the complaint they alleged. Their sole allegation, as I saw it, is not that there was this thing was never remedied. Not that J.P. Morgan was supposed to remedy it, but that the practices they have alleged in the complaint, prior practices, continued after J.P. acquired WAMU in September of 2008. So to me, this practices continued is a tough issue because, and that's why I asked counsel the questions I did. So on a 12b-1 motion, is that enough to succeed? That's my question. Your Honor, if they the reason in this particular case it doesn't matter is because all of these plaintiffs invested and were defrauded prior to receivership. If you had a different plaintiff who made an investment on October 15th and who was claiming they were defrauded by the practices at issue, then you might, what Your Honor, would be appropriate, but they would have to plead a claim here consistent with their original pleading, and their original pleading alleges that they were defrauded and the fraud was aided and abetted, all of which occurred prior to the acquisition. So these plaintiffs don't have that type of a claim. Some other plaintiff could have that type of a claim. So are you suggesting, and sorry, I'm just following up, so are you suggesting that if we accept all the factual allegations that are pled as true and construe all allegations in the complaint in a light most favorable to the plaintiff, which is Ojo, out of our court, that on a 12b-1 standard, we cannot find in this situation based on the facts as pled that there is sufficient to take it outside of the North Korea jurisdiction? Correct. That is, you do need to accept their pleading and their allegations as true, and on those very allegations, they have pled themselves directly within the 1821d-13d-2 bar. That's correct, Your Honor. But because of the odd procedural morass that's involved here, that might there have been another way this could have presented itself where you would concede that leave to amend might be appropriate, but because of the procedural vehicle that it's here on, it's too late? Well, Your Honor, it is too late. They made a rule, judgment was entered in this case. Well, just a minute. Let's talk about that. Was really judgment entered? I know counsel suggests it was. Yes. It was a judgment suggesting that there was a motion on the pleadings, and the motion on the pleadings was decided. But my review of the record doesn't suggest that any separate judgment was ever entered. And there's no requirement for that, Your Honor. What does Rule 52 say? Rule 54 says that if it finally disposes of the action and it's an appealable order, it is a judgment for purposes of the Federal rules. The order dismissing the case on grounds of subject matter jurisdiction was an appealable order, and that was the judgment. It doesn't have to be a document called judgment. And, Your Honor, if that were not the case we would be in trouble. I mean, my worry is that I now have got two Ninth Circuit cases that say if I enter a judgment for dismissal on the pleadings or I enter an order that is a judgment for summary judgment, I've got to enter something extra to say that the judgment was entered. I don't think in this particular case where you entered an order dismissing the case on subject matter jurisdiction grounds, and if this were not a judgment, Your Honor, then you then this Court has no jurisdiction over this case because that's that's what we they've appealed from in this case. That's what I was going to ask him if he got that. He said it was a judgment. Yes, go ahead. The Additional questions. So until we tell you to sit down, you get to stay there. Come and shoot at me. The Ponzi scheme was not discovered until after the acquisition, correct? Correct. And is there any question but that some of the conduct chronologically either happened or continued after the date of acquisition? Is there a question? Nothing that's been alleged that's relevant to the claims here. So I This allegation that the conduct continued, you would, what would we do with that? I think that's not a material allegation to the claims of these plaintiffs. Remember, they want to bring this as a class. Weren't we told that some of the actual bank procedures took place after the date of acquisition? No. Every specific act alleged in the complaint occurred prior to the receivership. And again, the problem, I think, where this is coming is they want to represent a class, but you have to look at the claims pleaded by the named class members, and every one of these class members was a – bought a fraudulent CD prior to the receivership. So you would just say the beginning and end of this case is the date of the CDs were purchased and any other conduct is just not relevant? That's correct, because the basis of the claim is aiding and abetting a fraud and aiding and abetting a breach of fiduciary duty, and the fraud and breach of duty that was perpetrated on these people in buying these allegedly fraudulent CDs occurred by WAMU employees prior to receivership. All right. I guess that's the big argument, isn't it? Thank you very much. Thank you, Your Honor. Thank you. All right. You have two minutes. And if I could focus on the issue of post-acquisition conduct. The Ponzi scheme here did not magically end on the date of acquisition. The perpetrators of the Ponzi scheme didn't say, oh, we've had a bank merger, let's stop doing what we're doing. The Ponzi scheme continued. And what counsel, who's very skilled – Our complaint suggests that. Our complaint suggests – I mean, as I read your complaint, it suggests that your plaintiffs invested between May of 2006 and August of 2008, which was a month before September 2008, these were the times they invested in these, if you will, whatever they got, not much, and then it ended based on the complaint. There was no other investments. Judge Smith, you're correct as to the investment times. As I mentioned before, with respect to the record, page 86, paragraph 8 of the complaint alleges these practices continued after J.P. Morgan acquired WAMU in September of 2008. Again, I'm trying to figure out what practices continued, because it all talks about the investments which were happening between May of 2006 and August 2008. Yeah, I think the complaint talks much more than the investments. It talks about the remote banking platform. It talks about the fact that checks did not go to the intended, quote-unquote, CD, which we know at this point – Well, the remote banking program in and of itself having that is not a problem, is my understanding, is what it allowed them to perpetuate their Ponzi scheme, right? I mean, you can't have a legitimate remote banking system. You are correct. Okay. I guess the fundamental problem – If we thought you have a Twombly-Nickball problem by what your bare allegation there, is there a vehicle to correct that in light of the procedural status of this case? Well, we think the answer is yes. I actually agree with defense counsel's analysis of a judgment in a subject matter jurisdiction ruling. We believe the vehicle was Rule 60 to get there, and I guess that's the short answer. If I could, in my last moment, just mention one item on the post-acquisition. Again, what counsel is suggesting is that you have wrongful conduct, and in our case, a Ponzi scheme. Let's say it starts one day before the acquisition, and it continues for 15 years post-acquisition. If it's the same employees doing the same wrongful conduct, there would be immunity for the acquiring bank. That cannot be the purpose of FIREA. All right. Thank you. Thank you. This matter stands submitted. Thank you both for your argument. I would say to both of you, excellent arguments here. Thanks very much. Well done. Christy Manson and Woods, LTD v. Halsey, M. Minor v. Christy's, Inc., case number 10-16373. Okay. Before we start the clock here, I just want to sort of procedurally discuss with counsel here. Okay. So we have, just tell me who you are. I'm Clifford Sloan for Appellants, Christy's, and Christy Manson and Woods. Okay. And you are, okay, Christy. So you're plaintiff, appellant, and defendant counterclaimant appellee? Yes. That's who you are? Yes. Okay. All right. From that standpoint then, you have 20 minutes total. So were you going to talk about both your appellant's arguments and your counterclaimant's and if you had any time you wanted to reserve to come back on your, where you're the, I guess, where you're the, are you the appellee somewhere? Or are you the appellant? No, I'm not. But you're the appellant. Okay. Yes. Okay. So you want to say some, all right. So, yeah. So you have 20 minutes total. So that's. And I'm planning to address the issues together. And are only you going to speak? Yes, Your Honor. Okay. And I'd like to reserve five minutes for rebuttal. All right. Good. And we can.
judges: Lucero, Callahan, Smith